[No. D010449. Fourth Dist., Div. One. Oct. 26, 1990.]

ROBERTA HILL, Plaintiff and Appellant, v.
PHYSICIANS & SURGEONS EXCHANGE OF CALIFORNIA et
al., Defendants and Respondents.

**COUNSEL**

Richard P. Verlasky for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Paul A. Richler, Jeffrey N. Brown and D. Toby Tabachnick for Defendants and Respondents.

## OPINION

**LIM, J.**\*—Plaintiff Roberta Hill appeals a summary judgment in favor of defendants Physicians & Surgeons Exchange of California and Fremont Indemnity Insurance Group (together Fremont) on Hill's complaint for breach of contract for failing to defend its insured, Dr. Mitchell Steinway, under a medical malpractice insurance policy. Hill contends the court erred in (1) finding she failed to make a timely claim to Steinway, (2) finding Fremont did not breach its duty to defend its insured, and (3) failing to grant a continuance to allow her to take Dr. Steinway's out-of-state deposition. We conclude the court correctly granted summary judgment and accordingly affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 1980, Steinway performed surgery on Hill to correct a recurring dislocation of her right shoulder. Following surgery, Hill was unable to move her right wrist and had no feeling in her arm. She was frightened, concerned and apprehensive. When she asked Steinway if this was supposed to happen, he said "no." Hill expressed her disappointment to Steinway while she was still in the hospital and stopped seeing him on October 21, 1980. Steinway never billed Hill for his services.

Fremont insured Steinway under a "claims made" medical professional liability policy from July 1, 1980, to January 1, 1981, and under a second policy from April 8, 1981, to August 1, 1981. Both policies lapsed for nonpayment of premium.

On September 4, 1981, Hill sent Steinway a formal letter under Code of Civil Procedure section 364 stating her intention to bring a medical malpractice action against him. She sued him in superior court and after several unsuccessful attempts to serve him, obtained a default judgment.

On June 3, 1985, Hill notified Fremont of the lawsuit against its insured, Steinway, and offered to agree to have the default set aside to permit Fremont to appear and defend. Fremont refused, however, stating no coverage for Hill's claim existed because no claim had been made during either policy period. Hill eventually settled her suit with Steinway for $284,303.21, with payment of $15,000 by Steinway and an assignment of his rights against Fremont for reimbursement under the policy and for failure to appear and defend him.

---

\* Assigned by the Chairperson of the Judicial Council.

Hill then sued Fremont for breach of contract and breach of the implied covenant of good faith and fair dealing.[1] The court granted summary judgment in favor of Fremont, finding no claim was made by Hill against Steinway during the policy periods and thus, Steinway was not entitled to a defense or indemnity in the action by Hill.

## DISCUSSION

### I

Hill contends summary judgment was improper because she made a "claim" during the policy period. She asserts her immediate complaint to Dr. Steinway about the results of the surgery, his acknowledgement she should not have those problems and his failure to bill her for his services should be construed as a claim.

A "claims made" policy is one in which the insurer agrees to assume liability for any covered conduct as long as a claim is first made during the policy period. (*Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 845, fn. 5 [140 Cal.Rptr. 493].) Here, both parties agree Dr. Steinway was insured under a claims-made policy. That policy provides: "Except to such extent as may otherwise be provided herein, the coverage of this Policy is limited to liability for only those claims which arise from incidents occurring subsequent to the retroactive date stated in the Declarations Insert and *which are first made by or on behalf of an injured party against the Insured while this Policy is in force . . . .*" (Italics added.) Thus, in order for coverage to apply, Hill was required to make a claim against Steinway before January 1, 1981, the date on which the first policy lapsed.[2]

"A claim, both in its ordinary meaning, and in the interpretation given to it by other courts in similar circumstances [citation], is a demand for something as a right, or as due." (*Phoenix Ins. Co.* v. *Sukut Construction Co.* (1982) 136 Cal.App.3d 673, 677 [186 Cal.Rptr. 513].) A claim requires more than an inquiry requesting an explanation (*Hoyt* v. *St. Paul Fire and Marine Ins. Co.* (9th Cir. 1979) 607 F.2d 864, 866-867) or the lodging of a grievance without a demand for compensation (see *American Mutual Liability Insurance Co.* v. *Goff* (9th Cir. 1960) 281 F.2d 689, 692), but less than

---

[1] Hill also sued Fremont for emotional distress and punitive damages under Insurance Code section 790.03, subdivision (h), but conceded in her opposition to the motion for summary judgment she was not entitled to recover for those causes of action.

[2] The first policy, covering the period July 1, 1980, to January 1, 1981, applies to the issue here. This was the period during which the allegedly negligent professional services were rendered. Under the "Period of Coverage" provision, not only must the claim be made during the policy period, but the "incident" must also occur during that same period.

the institution of a formal lawsuit (*Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261, 270 [134 Cal.Rptr. 427]). The word claim imports " ' "the assertion of a liability to the party making it to do some service or pay a sum of money . . . ." ' " (*Id.* at p. 269, quoting *San Pedro Properties, Inc.* v. *Sayre & Toso, Inc.* (1962) 203 Cal.App.2d 750, 755 [21 Cal.Rptr. 844].)

In response to an interrogatory as to when she first made a claim against Steinway, Hill stated she believed Steinway knew from the time she awoke in the recovery room that the result achieved was unexpected and below the standard of care; she believed Steinway knew immediately that she was dissatisfied with the result and wanted the matter resolved to her satisfaction; because Steinway did not submit a bill, he therefore knew she was dissatisfied with the results and did not want to pay for his services; and a formal letter stating her intention to sue him was sent on September 4, 1981. In a supplemental pleading, Hill stated she was disappointed with Steinway and asked him if her symptoms were "supposed to happen as a result of the surgery."

However, whether Hill believed or Steinway knew he had fallen below the standard of care is irrelevant to the issue of whether Hill made a claim against him. At no time during the policy period did Hill demand Steinway perform a service owed her or compensate her in any way. Although Hill asserts she was worried, frightened and terribly upset with the results of the surgery, she remained Steinway's patient for one month following surgery. During this time, Hill did not demand money or any specific remedy. At most, she requested an explanation and expressed her disappointment. Contrary to Hill's position, a complaint is not an assertion of a right. Moreover, the fact Steinway may have been aware of Hill's injury is not sufficient to constitute a claim because " '[a] claim connotes an assertion of a legal right, as distinguished from a recognition of that right.' " (*Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co., supra,* 64 Cal.App.3d at p. 269; see also *Ins. Corp. of Amer.* v. *Dillon, Hardamon & Cohen* (N.D.Ind. 1988) 725 F.Supp. 1461, 1470.) Thus, no claim was made against Steinway during the applicable policy period.

## II

■ Hill contends Fremont breached its duty to defend Steinway because the facts showed the potential of liability under the policy. Thus, she asserts, Fremont is obligated to pay the amount of its insured's settlement.

■ In general, "[t]he duty to defend is broad and insurance policies must be interpreted so as to protect the reasonable expectations of the

insured. [Citation.] . . . An insurer must defend a suit which *potentially* seeks damages within the coverage of the policy . . . . The obligation to defend is measured by the terms of the policy and the allegations of the complaint against the insured and where the complaint reveals potential liability within the policy, the duty to defend arises. [Citation.] If there is a doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor. [Citation.]" (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 753 [161 Cal.Rptr. 322], italics in original.)

■ However, "the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations]. . . . [¶] . . . In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary [citations]. When the language is clear, a court should not give it a strained construction to impose on the insurer a liability which it has not assumed [citations]." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].)

■ Here, the policy in issue is a claims-made policy. Its language clearly and specifically included coverage only for claims made during the policy period. As we previously discussed, a "claim" is "a demand for something as a right, or as due." (*Phoenix Ins. Co.* v. *Sukut Construction Co., supra,* 136 Cal.App.3d at p. 677.) Hill neither made a demand to nor asserted a right against Steinway. Thus, there was no potential liability under the insurance policy and no obligation to defend on the part of Fremont.

### III

■ Hill contends the court should have allowed her to take Steinway's deposition under Code of Civil Procedure section 437c, subdivision (h). That section provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." Hill asserts Steinway's deposition may have been useful to the court in assessing the facts of this case.

"However, Code of Civil Procedure section 437c mandates a continuance of a summary judgment hearing upon a good faith showing *by affidavit* that a continuance is needed to obtain facts essential to justify opposition to the motion." (*Fisher* v. *Larsen* (1982) 138 Cal.App.3d 627, 648 [188 Cal.Rptr. 216], italics added.) "It is not enough to merely raise the issue in the

opposition memorandum. [Citation.]" (*American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1280 [241 Cal.Rptr. 466].) Here, in Hill's opposition to Fremont's motion for summary judgment, she added a paragraph stating: "Dr. Steinway presently practices in New Jersey. As part of his settlement agreement with [Hill], he agreed to make himself available for deposition which has not been accomplished to date . . . ." Hill's pleadings contain no affidavit detailing facts to show the existence of evidence supporting her theory of coverage and the reasons why this evidence could not be presented at the time of the hearing. Hill filed her complaint in January 1988, and Fremont filed and served its motion for summary judgment in February 1989. Hill does not claim she unsuccessfully attempted to depose Steinway, but only that his deposition "has not been accomplished to date." "Thus, it would not be unreasonable for a trial court to conclude that the issue was not a matter of lack of time in which to discover evidence, but that such evidence did not in fact exist. [Citations.]" (*Id.* at pp. 1280-1281.)

Further, as we previously concluded, Steinway's belief and understanding of Hill's disappointment are irrelevant to the issue of whether Hill made a claim where her own version of the facts shows she simply lodged a grievance without demanding compensation. Even if the court had ordered a continuance to allow Steinway's deposition, his testimony could add nothing to Hill's evidence. Thus, the court properly denied Hill's request for a continuance.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Nares, J., concurred.